IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

JOSEPH RODI

    Plaintiff

v.

SOUTHERN NEW ENGLAND SCHOOL OF LAW

FRANCIS J. LARKIN, ESQUIRE

DAVID M. PRENTISS, ESQUIRE

RECEIPT # 48058
AMOUNT $ 150
SUMMONS ISSUED 3
LOCAL RULE 4.1 _____
WAIVER FORM _____
Civil Action MCF ISSUED _____
BY DPTY. CLK. ___
DATE _____

03 cv 11120 NG

**COMPLAINT**   MAGISTRATE JUDGE_____

1. Plaintiff is a resident of Camden County domiciled at 675 Woodland Avenue, Cherry Hill, New Jersey 08002.

2. Southern New England School of Law (hereinafter SNESL) is a Massachusetts corporation with its principal place of business in Massachusetts.

3. Francis J. Larkin, Esquire was the Dean of SNESL and made affirmative representations in his capacity as Dean and resides in Massachusetts.

4. David M. Prentiss, Esquire was the Acting Dean and made affirmative representations in his capacity as Acting Dean and is being sued in his official capacity and resides in Massachusetts.

**JURISDICTION**

5. This Court has jurisdiction under 28 U.S.C. 1332 as there is complete diversity between the parties, in that all Defendants, for the purpose of diversity, reside in Massachusetts, Plaintiff resides in New Jersey, and the matter in controversy exceeds the legal requirement.

## VENUE

6. Venue arises under 28 U.S.C. 1391 and is appropriate as the events arose by and through the Southern New England School of Law.

## FACTS

7. In or about July 1997, Plaintiff received correspondence to persuade Plaintiff to attend SNESL. (Exhibit A).

8. The solicitation was materially misleading in that it represented that the School was on the verge of becoming accredited by the American Bar Association.

9. Defendant knew, acknowledged and contracted the ABA standards, which were to become in effect one month later, which precluded a school from making representations as to the ability to become accredited.

10. This correspondence when read as a whole suggested to the reasonable reader that accreditation occurred or was soon to occur.

11. Defendant at the time of writing this letter knew and understood it had deficiencies, which would preclude ABA accreditation, such as substandard bar passage rates.

12. Defendant failed to disclose said deficiencies.

13. Defendant is in a superior position and was in a fiduciary capacity.

14. Subsequently, in or about September 1997, Defendant was denied final approval of accreditation under the American Bar Association guidelines.

15. In and after September 1997 Defendant reapplied for provisional approval.

16. Defendants made verbal assurances that SNESL would obtain accreditation at various and subsequent times throughout Plaintiff's enrollment at SNESL.

17. David M. Prentiss, Acting Dean, acting within the scope of his duty, provided written assurances that SNESL would obtain accreditation. (Exhibit B).

18. Defendants at all times relevant to the Complaint were aware Plaintiff was a New Jersey resident and would seek to obtain a New Jersey license to practice law.

19. Defendants knew at all times relevant to the Complaint that Plaintiff would rely on their statements.

20. Despite the repeated assurances to remain at Southern New England School of Law, Defendant never became accredited.

21. Defendant did not provide the education promised.

## FIRST CAUSE OF ACTION
## (Against all Defendants for Fraudulent Deceit)

22. Beginning in or about July of 1997, Defendants, and each of them, acting through their agents and employees with actual or apparent authority, solicited Plaintiff to enroll in SNESL by making a number of representations to Plaintiff specifically, and to the public generally. These include, but are not limited to, the following:

22.1 That the quality of the law school program would be excellent and would be consistent with the requirements necessary to obtain accreditation by the ABA;

22.2 That "Receiving the favorable recommendation of the ABA Accreditation Committee is the culmination of the law school's rapid rise to prominence". (Exhibit A);

22.3 SNESL states quite explicitly that they are "highly confident" to obtain full approval following a favorable recommendation from the ABA's Committee for accreditation.

22.4 That SNESL's acquisition of a $3.5 million financing arrangement would provide the financial stability necessary to secure ABA accreditation.

22.5 That SNESL was different from other law schools because it offered a curriculum that was committed to educating and training future public interest lawyers.

22.6 That SNESL was different from other law schools because it offered a style of teaching law that was nurturing and non-intimidating.

3

23. When these representations were made to Plaintiff by Defendants, and each of them, through their agents and employees, Defendants either did not believe the representations to be true, lacked reasonable grounds for believing them to be true or suppressed facts which, though want of communication, made the representations to Plaintiff misleading. The true facts, which either were known or should have been known to Defendants and their agents and employees were:

23.1 That SNESL had no reasonable prospect of being other than a qualitatively lower-tier law school during the time that plaintiff would be enrolled;

23.2 That SNESL's bar passage rate never reached a level remotely acceptable to achieve ABA approval and SNESL had a course of conduct violative of ABA standards 102, 405(c), 509 and 701.

23.4 That the faculty, administration, student body and program of legal education assembled and implemented by SNESL was inadequate and unqualified to win prompt accreditation by the ABA;

23.5 Shortly after SNESL learned of its denial of ABA accreditation in November of 1999, the law school terminated seven of the fourteen full-time faculty staff, in violation of the ABA's requirement of law schools duty and obligations to exert all necessary efforts and resources to achieve ABA approval, and further, at the great expense of students legal training.

23.6 Shortly after SNESL learned of its denial of ABA accreditation in November of 1999, the law school breached its promise to appeal directly to the ABA House of Delegates. This promise was based on SNESL's statements that it was in "substantial compliance" with each of the ABA standards applicable to the accreditation of law schools. This promise was breached.

24. When Defendants, and each of them, through their agents and employees, made the foregoing representations to Plaintiff, they did so with the intention of inducing Plaintiff to act in reliance upon those representations, to forebear other vocational or academic opportunities, to enroll in SNESL, to pay fees and tuition commensurate with that charged by established and accredited law schools, and to incur other attendant expenses.

4

25. Plaintiff, at the time these representations were made, was ignorant of the falsity of these representations, and in fact believed them to be true. In reliance upon these representations, Plaintiff was induced to and did forbear gainful employment or other vocational or academic opportunities, enroll in SNESL, pay substantial tuition and fees and incur other attendant expenses.

26. Plaintiff was accepted into SNESL July of 1997; upon acceptance into the program, he reserved his seat with a $1250 deposit paid in 1997.

27. At the time Plaintiff applied for and was accepted for a position in SNESL, he was living in New Jersey. With acceptance into the SNESL program, Plaintiff was elated because he believed he could finally realize his life-long dream of becoming an attorney. Plaintiff relocated to Massachusetts to attend SNESL.

28. Plaintiff's reliance upon the representations of Defendants, and each of them, was reasonable in that Plaintiff was ignorant and inexperienced in regard to the matters represented by Defendants, and each of them, were aware of Plaintiff's relative ignorance and inexperience and either knew or should have known that Plaintiff would place reliance upon the said representations.

29. Once Plaintiff had enrolled in SNESL, Defendants, and each of them, arising through their agents and employees with actual or apparent authority, made additional representations to Plaintiff in order to induce Plaintiff to remain enrolled in SNESL and to reenroll for subsequent semesters of study.

30. When these further representations were made to Plaintiff by Defendants, and each of them, through their agents and employees, the latter either did not believe the representations to be true, lacked reasonable grounds for believing them to be true or suppressed facts which, through want of communication, made the representations to Plaintiff misleading. The true facts that either were known or should have been known to Defendants and their agents and employees were:

30.1 That the ABA's 1997 denial of accreditation to SNESL was "within an inch of ABA approval."

5

30.2   That statement by admissions director that SNESL would be accredited led plaintiff further to forgo transfer credit and repeat the first year of law school.

30.3   Students similarly situated as plaintiff entered SNESL the previous year with transfer credits and advanced standing, which further represented to plaintiff the certainty with which ABA accreditation was represented.

30.4   That in or about June 1999, a special time waiver had been granted to SNESL by the ABA because upon reapplication SNESL's "case was so strong;"

30.5   SNESL Town Meetings held under the pretext of ABA accreditation were peripheral in nature and limited at best. Attempts to question the issues were quashed rendering meetings meaningless. Tape recordings were prohibited.

30.6   That SNESL's prospects for obtaining ABA accreditation were problematic at best, and were in fact remote and;

30.7   When Defendants, and each of them, through their agents and employees, made the foregoing representations to Plaintiff they did so with the intention of inducing Plaintiff to act in reliance upon those representations by remaining enrolled at SNESL, by continuing to forbear other vocational or academic opportunities, by continuing to pay tuition and fees and by continuing to incur other attendant expenses.

31.   When these further representations were made to Plaintiff by Defendants, and each of them, through their agents and employees, the latter either did not believe the representations to be true, lacked reasonable grounds for believing them to be true or suppressed facts which, though want of communication, made the representations to Plaintiff misleading. The true facts, which either were known or should have been known to Defendants and their agents and employees were that the ABA was highly critical of SNESL, and that absent a major overhaul of the student body, faculty, administration and programs of legal education offered by SNESL, SNESL's prospects for obtaining ABA accreditation prior to Plaintiff's graduation in June of 2000 were problematic at best, and were in fact remote.

32.   Plaintiff, at the time these representations were made by Defendants, and each of them, was ignorant of the falsity of these representations and in fact believed them to be true. In

reliance upon these representations, Plaintiff was induced to and did remain enrolled at SNESL, re-enrolled for the spring 1998 semester and through graduation June 2000, continued paying the required tuition and fees and continued to incur the other expenses attendant to Plaintiff's enrollment. Had Plaintiff known the actual facts, Plaintiff would not have taken these actions, and Plaintiff's reliance upon the said representations was reasonable because Plaintiff was ignorant and inexperienced in regard to the matters represented, and Defendants, and each of them, were aware of Plaintiff's relative ignorance and inexperience and either knew or should have known that Plaintiff would place reliance on the said representations.

33. As a proximate result of the conduct of Defendants, and each of them, Plaintiff has suffered severe emotional distress, anxiety, humiliation, mental anguish and remains stigmatized, all to Plaintiff's general damage according to proof at the time of trial.

34. As a further proximate result of the conduct of Defendants, and each of them, Plaintiff has suffered a loss of wages and benefits for the period August 1997 through June 2000, according to proof at the time of trial.

35. As a further proximate result of the conduct of the Defendants, and each of them, Plaintiff has suffered loss of earnings and a loss of earning capacity, and impairment to Plaintiff's professional career and professional career opportunities according to proof at the time of trial.

36. As a further proximate result of the conduct of Defendants, and each of them, Plaintiff has suffered a loss of tuition monies and other related fees paid to SNESL, and attendant expenses incurred by Plaintiff according to proof at time of trial.

## SECOND CAUSE OF ACTION
### (Respondeat Superior)

37. Plaintiff incorporates paragraphs 1-36 as if set forth herein at length.

38. Francis J. Larkin, Dean is an attorney and Dean of the School who had superior knowledge and understanding of the ABA accreditation process and was acting within the scope of his duty.

39. David M. Prentiss is an attorney and Acting Dean of the School who had superior knowledge and understanding of the ABA accreditation process and was acting within the scope of his duty.

40. SNESL is responsible for said breach of duty under theory of respondeat superior.

41. Defendant was in a position of trust.

42. Defendant had a fiduciary obligation to Plaintiff to disclose the facts with complete honesty and candor.

43. Defendant breached the duty to Plaintiff by making affirmative representations that accreditation would occur.

### THIRD CAUSE OF ACTION
(Against all Defendants for Violations of Chapter 93A Consumer Protection Statutes)

44. Plaintiff incorporates Cause of Action One and Two as if set forth herein at length.

45. Plaintiff is a consumer as defined under the Massachusetts Consumer Protection Act.

46. Defendant committed fraud as defined under the Act.

47. Defendants' acts were intentional or in reckless disregard for the truth.

### FOURTH CAUSE OF ACTION
(For Negligence Against All Defendants)

48. Plaintiff incorporates herein the allegations of Count One through Three as if set forth herein at length.

49. At all times relevant herein, Defendants, and each of them, had a duty to use due care to hire competent and experienced administrators, faculty, consultants, and other agents and employees who would know the laws applicable to unaccredited law schools, structure the curriculum and law school program to conform with the relevant laws and regulations,

8

communicate those requirements to the law school student body in a clear and understandable manner, and to fulfill the numerous representations made to SNESL students regarding ABA accreditation. Further, the Defendants, and each of them, had a general duty to provide a useful education to prepare the students for the practice of law.

50. Defendants, and each of them, further breached their duty to Plaintiff when they failed to comply.

## FIFTH CAUSE OF ACTION
### (For Breach of Contract Against All Defendants)

51. Plaintiff hereby incorporates Cause of Action One through Four as if set forth herein at length.

52. The Plaintiff and defendant's entered into a series of valid contracts, the terms of which were partly expressed in writing and partly oral and partly implied by the conduct of the parties. Written components of the contracts include, but are not limited to, the SNESL 1997-1998 Catalog; the application; the written correspondence between the plaintiff and Defendants. Oral components of the contracts include, but are not limited to, the representations by Director of Admissions that SNESL would be accredited.

53. Plaintiff has performed all obligations to Defendants.

54. Defendants breached the contract by failing to perform the contract according to its terms. For example, Defendants failed to exercise reasonable care in obtaining prompt accreditation from the ABA.

55. As a direct result of Defendants breach of the contracts, Plaintiff has suffered a loss of tuition monies and other related fees paid to SNESL, and attendant expenses incurred by Plaintiff according to proof at time of trial, including attorneys' fees and court costs herein, resulting from the Defendants' breach of contract and has suffered further special damages to be shown at time of trial but within this Courts jurisdiction.

## SIXTH CAUSE OF ACTION
## (Estoppel)

56. Plaintiff incorporates Cause of Action One through Five as if set forth herein at length.

57. Plaintiff was induced to attend SNESL by the conduct of Defendant.

58. Plaintiff would not have attended SNESL absent the affirmative representations of Defendants' ability to attain accreditation.

59. Plaintiff relied on said representations to his detriment.

60. Plaintiff suffered harm in out of pocket expenses, loss of income and , loss of career path as a result of Defendants' representations.

61. Defendant had reason to know that making representations of confidence in the outcome were not warranted.

62. Plaintiff states a cause of action for estoppel.


## SEVENTH CAUSE OF ACTION
## (Breach of Implied Covenant of Good Faith Against All Defendants')

63. Plaintiff incorporates Cause of Action One through Six as if set forth herein at length.

64. The contract between Defendants and Plaintiff contains an implied covenant of good faith and fair dealing wherein Defendants promised to act fairly, honestly and reasonably in performing the terms and conditions of the contracts and to refrain to do any acts which would prevent or impede plaintiff from performing all conditions of the contract to be performed by him or from the reception and enjoyment of the benefits of the contract.

65. Plaintiff is informed and believes that Defendants breached the implied covenant of good faith and fair dealing without good or sufficient cause by doing the foregoing acts incorporated herein.

66. Plaintiff is informed and believes that Defendants have previously and continue to act in concert to breach the implied covenant of good faith and fair dealing without good or sufficient cause by engaging in an arbitrary, capricious and callous effort to ensure their goal of ABA approval regardless of the costs to individual students, including Plaintiff herein. By way of example, Defendants' wrongful conduct includes the arbitrary and unjustified reduction of grades given by individual professors and changing the grading system to satisfy the ABA, despite the result that students whose grades had previously been sufficient were now threatened with the possibility of academic dismissal.

67. Defendants committed the above acts and omissions, among others, although they knew that an unreasonable withholding of the benefits they had promised to Plaintiff would occur.

68. Defendants, by their directors, managerial officers, employees and agents authorized, approved and ratified the despicable conduct of their employee, of which its directors, managerial officers, agents and employees had notice.

69. As a direct and proximate result of the breach and the above-mentioned wrongful conduct of defendants, and each of them, Plaintiff has sustained injuries and general, special and punitive damages in excess of the jurisdiction of the Court and capable of proof a time of trial.

70. The conduct of the Defendants was despicable and was intentionally performed with malice, fraud and oppression and with a tortuous and reckless disregard of the consequences unreasonably denying the promised benefits and refusing to attempt in good faith to deal fairly with Plaintiff. Plaintiff therefore seeks punitive and exemplary damages in an amount sufficient to punish and deter defendants.

## EIGHTH CAUSE OF ACTION
### (Continuing Tort)

71. Plaintiff incorporates Cause of Action One through Seven as if set forth herein at length.

72. Plaintiff alleges a continuing tort.

## NINETH CAUSE OF ACTION
## (Racketeer Influenced and Corrupt Organizations Violations Against All Defendants)

75. Plaintiff incorporates Cause of Action One through Eight as if set forth herein at length.

76. Based on the facts incorporated by reference, Defendants devised and/or intended to devise a scheme or artifice to defraud and/or obtain money from Plaintiff by means of false or fraudulent pretenses, representations, or promises.

77. Defendants used the United States Postal Service on more than one occasion to execute the scheme or artifice referred in paragraph 22. In early 1997, students across the country received a mailing from SNESL advertising the school. Plaintiff (a New Jersey resident at the time), requested a SNESL 1997-1998 catalog. Subsequent to response, he received the catalog. Other future students residing in other states also responded to the mailing and requested and received the same catalog containing false information.

78. Based upon the information provided to plaintiff in the 1997-1998 catalog and attached letter, plaintiff enrolled at SNESL and expended considerable sums on tuition and expenses.

79. Defendants have engaged in a pattern of racketeering activity, as their actions are indictable under United States Code section 1341 relating to mail fraud.

80. Defendants engaged in the enterprise of the operation of a law school, the marketing and recruiting of students from outside of Massachusetts engaged Defendants in interstate commerce, or activities that affected interstate commerce.

81. The Defendants used the income they derived from their pattern of racketeering activity to acquire and/or maintain an interest in, establish, operate, and control the enterprise, i.e., the law school.

82. The Defendants' activities were the proximate cause of Plaintiff's damages.

83. As a result of the aforementioned acts, Plaintiff is entitled to treble damages and costs

of suit, including reasonable attorneys fees.

    WHEREFORE, Plaintiff prays;

1. For general damages according to proof;
2. For special and incidental damages, according to proof;
3. For statutory damages (double and treble) according to proof;
4. For pre-Judgment interest from the dates of each;
5. For reasonable attorneys' fees incurred herein;
6. For costs of suit incurred herein;
7. For punitive damages; and,
8. For such other further relief as the Court may deem just and proper.

    Joseph S. Rodi
    675 Woodland Avenue
    Cherry Hill, NJ 08002

    _____
    Pro Se

# EXHIBIT A



# SOUTHERN NEW ENGLAND SCHOOL OF LAW

Dear Applicant:

I am pleased to inform you that the Accreditation Committee of the American Bar Association has voted to recommend that Southern New England School of Law be granted Provisional Accreditation. We are very proud that the school has received a favorable recommendation from the ABA Accreditation Committee in the first year that we applied for accreditation.

As part of the standard procedure of the accreditation process, the recommendation of the Accreditation Committee must now be ratified by two other entities within the ABA. We are highly confident of gaining these favorable approvals at the ABA Annual Meeting in August.

As you may know, Provisional Approval is the sole designation the ABA grants on an initial application for accreditation. Provisional Approval carries with it all the rights and privileges of graduates of the law school to sit for the bar examination in any state in the country.

Receiving the favorable recommendation of the ABA Accreditation Committee is the culmination of the law school's rapid rise to prominence. We moved into a new, state-of-the-art law school facility in 1994. We were accredited by the New England Association of Schools and Colleges in 1995. In 1996, we completed a $3.5 million financing arrangement with the Fleet National Bank to fund the final phase of our ABA accreditation plan. With the added stature and resources that these accomplishments have brought to the law school, our future is bright indeed.

Most importantly, our future will be shaped by our core mission: providing legal education in a supportive and nurturing setting. The school offers full-time and flexible part-time programs with affordable tuition to meet the needs of students seeking the opportunity of obtaining a legal education. Law students are taught both the analytical and practical skills of lawyering by an accomplished faculty committed to each student's success.

We truly are a different kind of law school. To find out more about us, please contact the Admissions Office at 1-800-213-0060 or nhebert@snesl.edu. We are still accepting applications for the coming year. For those of you with a strong desire to attend law school this fall, we will be happy to work with you to expedite the processing of your application.

The future of Southern New England School of Law has never been brighter, and we are ready to help you change your future. Come join us!

Sincerely,

Francis J. Larkin
Dean

# EXHIBIT B



SOUTHERN
NEW ENGLAND
SCHOOL
of LAW

July 27, 1998

Joseph Rodi
1261 Church Street #38D
New Bedford, MA 02745

Dear Joseph:

I understand from the Registrar's Office that you may be seeking to transfer to another law school. I can see how this may be a difficult decision for you, and I want to assure you that I want you to make the decision that is right for you. However, I would like the opportunity to make sure you are fully informed of the school's current status regarding ABA accreditation.

As the enclosed report shows, we have done an enormous amount of work in preparation for our next application for ABA approval. The four areas in which the ABA determined that the school is not in substantial compliance with its standards have been improved through the hard work of the faculty, staff and trustees, as well as the students working on the ABA committees. For this reason, we are very much looking forward to bringing an ABA inspection team back to the school to show them the amount of progress we have made. We plan to submit the application this Fall and should receive a final decision from the ABA February or August of 1999.

Please consider carefully whether it is in your interest to transfer to another law school at this time. I know of no other law school that gives its students the support and access to faculty that we have here at Southern New England School of Law. That commitment to students can play a large role in achieving success in law school.

In addition, as disappointing as the ABA decision was last year, it is not unusual for a school to be turned down on its first try. Given that this is the nature of the accreditation process, and considering all the progress we have made this year, there should be no cause for pessimism about the school's ultimate achievement of ABA approval.

I would be happy to speak with you personally about your decision. Please feel free to stop by my office or call me at extension 150.

Sincerely,

David M. Prentiss
Acting Dean

DMP:dd
Enclosure